IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BK TRUCKING CO., SANTELLI TRUCKIN, INC., HEAVY WEIGHT ENTERSPRISES, INC., and RUSTY DANIEL TRUCKING, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 15-2282 (JBS/AMD) |
| v. | **OPINION** |
| PACCAR, INC., PACCAR ENGINE CO., KENWORTH TRUCK CO., and PETERBILT MOTORS CO., | |
| Defendants. | |

APPEARANCES:

James C. Shah, Esq.
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107-1909

James E. Cecchi, Esq.
Lindsey H. Taylor, Esq.
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07021
     Attorneys for Plaintiffs BK Trucking Company, Santelli
     Trucking, Inc., Heavy Weight Enterprises, Inc., and Rusty
     Daniel Trucking, Inc., Plaintiffs

Anthony M. Pisciotti, Esq.
Danny Charles Lallis, Esq.
PISCIOTTI MALSCH
30 Columbia Turnpike
Suite 205
Florham Park, NJ 07932
     Attorney for PACCAR, Inc., PACCAR Engine Company, Kenworth
     Truck Company, and Peterbilt Motors Company, Defendants

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

In this putative class action, Plaintiffs[1] are current and former owners of Peterbilt or Kenworth trucks equipped with PACCAR MX-13 diesel engines ("the Engine"). Plaintiffs allege that the Engines, equipped with an After-Treatment System ("ATS") specifically designed to comply with the Environmental Protection Agency's 2010 Heavy Duty On Highway Emissions Standard ("2010 Emissions Standard"), are defective and render Plaintiffs' vehicles inoperable on account of the Engines' constant failure despite repeated warranty repairs. Plaintiffs contend that Defendants PACCAR, Inc., PACCAR Engine Company, Kenworth Truck Company, and Peterbilt Motors Company (collectively, "Defendants") developed, designed, manufactured, marketed, assembled, warranted, and sold vehicles with the Engine despite longstanding knowledge that the Engine was defective. Plaintiffs contend that the defect is irreparable and renders vehicles with the Engine unreliable for transportation and unsuitable for ordinary commercial use.

---

[1] The Plaintiffs in this action consist of the following: BK Trucking Company (New Jersey); Santelli Trucking, Inc. (New Jersey); Heavy Weight Enterprises, Inc. (Michigan); and Rusty Daniel Trucking, Inc. (Texas). Plaintiffs bring this action on behalf of themselves and all other persons similarly situated in New Jersey, Ohio, and Texas who leased or purchased vehicles equipped with the Engine.

Plaintiffs filed a seven-count Consolidated Class Action Complaint ("the Complaint") bringing claims under New Jersey, Texas, and Ohio law for breach of express warranty, consumer fraud, negligent design, and breach of the implied covenant of good faith and fair dealing. This matter now comes before the Court on Defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P.  For the reasons that follow, the Court will grant in part and deny in part Defendants' motion.

**Factual Background**

The Court accepts as true for purposes of the instant motions the following facts from Plaintiffs' Complaint. [Docket Item 17.] Plaintiffs are current or former owners and lessees of vehicles with a PACCAR MX-13 diesel engine manufactured by PACCAR, Inc. and its subsidiaries. (Compl. ¶ 1.)

**A. The Engine and ATS Emission System**

Defendants jointly developed, designed, manufactured, marketed, assembled, warranted, and sold vehicles equipped the PACCAR MX-13 diesel engine, which includes an ATS with integrated systems and their parts and components, intended to reduce vehicle emissions to comply with the EPA's 2010 Emission Standard. (Id. ¶ 1.) The ATS emission control unit is designed to work both actively and passively and is composed of two primary elements: (1) the Diesel Particulate Filter ("DPF") System, and (2) the Selective Catalyst Reduction ("SCR") System.

(Id. ¶ 24.) The ATS and its integrated systems are materially identical in all Engines. (Id. ¶ 28.)

The DPF is intended to reduce engine soot and particulate matter. (Id. ¶ 25.) The DPF system is composed of a hydrocarbon doser ("HC doser"), a Diesel Oxidation Catalyst ("DOC"), and a DPF. (Id.) It works by piping exhaust from the vehicle to the ATS and using the DPF to filter soot out of the exhaust. (Id.) The HC doser then sprays a small amount of diesel fuel into the exhaust, which reacts with the DOC to generate heat. (Id. ¶ 26.) This heat cleans, or regenerates, the DPF by reducing the filtered soot into ash. (Id.) The ash must be removed by taking out the DPF and cleaning it at specified intervals. (Id.)

The SCR system is intended to convert harmful emissions into harmless matter. The SCR system is composed of a Diesel Emissions Fluid ("DEF") Controller, a DEF Dosing Unit ("DEF Module"), a DEF Dosing Valve, and a SCR Catalyst. (Id. ¶ 27.) It works by injecting small amounts of a non-toxic DEF into the vehicle's exhaust stream after it exits the DPF. (Id.) The exhaust then enters the SCR, where a catalyst reacts with the DEF and exhaust and produces nitrogen gas and water vapor. (Id.) SCR technology has been used in prior engines manufactured by Defendants. (Id. ¶ 22.)

The ATS includes computers and sensors that continuously monitor the vehicle and its engine. (Id. ¶ 37.) When a

4

malfunction is detected, an indicator lights up and displays a
fault code to inform the driver of a problem. (Id.) The fault
code is also stored in the engine's control module ("ECM"),
which derates, or reduces the Engine's power, to protect the
ATS. (Id.) The Engine may eventually shut down completely if the
problem is severe enough. (Id.) The fault codes are retrieved
from the ECM when Defendants' authorized dealers perform repair
work on the Engine. (Id.) PACCAR requires that all engine
repairs be performed at one if its authorized facilities. (Id. ¶
38.) Defendants have not released explanations of these fault
codes, so vehicle owners are incapable of identifying and
repairing problems to the Engine on their own without taking
their truck to an authorized repair facility. (Id. ¶ 63.)

   **B. Alleged defects in the Engine**

   Plaintiffs allege that the Engine is defective because it
"suffers from constant failure under all conditions and
applications on a consistent basis, even after repeated warranty
repairs." (Id. ¶ 2.) Plaintiffs' vehicles equipped with the
Engine began to experience Engine failures almost immediately
after purchase, within the warranty period. (Id. ¶ 62.)
Plaintiffs' issues with the Engine include "repeated instances
of warning lights illuminating, Engines de-rating and shutting
down, [and] sensor, injector and doser problems . . . ." (Id. ¶
64.) Plaintiffs assert that their "vehicles have had continued

breakdowns and shut-downs necessitating delivery of the Vehicles to an authorized PACCAR repair facility for emissions warranty work." (Id. ¶ 63.) According to Plaintiffs, many authorized service facilities are unable to timely obtain the parts necessary for these Engine repairs. (Id. ¶ 66.)

Plaintiffs contend that the Engine's defect "stems from the ATS technology." (Id. ¶ 37.) According to Plaintiffs, "inherent deficiencies in the materials, factor workmanship, design, testing, fabrication, and/or manufacture of the ATS" results in numerous fault codes that require near-constant servicing of the Engine. (Id. ¶ 39.) Plaintiffs contend that these "repeated warranty repairs and replacements fail or have failed to repair and/or correct the defects." (Id. ¶ 2.) For repairs, Defendants allegedly authorized only "minor adjustments and/or replacement of failed components with the same defective components . . . ." (Id. ¶ 44.) This defect causes Plaintiffs to incur damages, including repair expenses, expenses due to the unavailability of their vehicles while being serviced by authorized PACCAR facilities, the diminution of the value of their vehicle, and the costs to re-power vehicles with alternative consistently reliable and functioning diesel engines. (Id. ¶¶ 29, 59.) Defendants have continued to sell later model year vehicles with the same allegedly defective Engine. (Id. ¶ 44.)

### C. Defendants' knowledge of the alleged defect

6

Plaintiffs allege that PACCAR "has known and/or should have known since at least 2009, prior to the sale of the Engines, that: (a) the ATS and its integrated systems, as well as their parts and components, were not sufficiently robust to achieve the represented levels of reliability and durability; (b) that the Engines and ATS were experiencing failures; (c) that repeated repairs would be required . . . ." (Id. ¶¶ 41, 106.) Plaintiffs allege that Defendants knew of the "scope of the defects" in the Engine because Defendants represented that the Engine had undergone extensive testing prior to sale. (Id. ¶ 42.) Further, Plaintiffs allege that, once the Engine hit the market in 2010, Defendants were aware that "attempts to correct the defect failed" because they could track ECM fault code data from the vehicles' ATS every time a vehicle was taken into an authorized dealership for warranted repairs. (Id. ¶ 43.) Defendants allegedly began receiving complaints about the Engine "shortly after releasing them to the market and issued numerous TSBs relating to, inter alia, the ATS, beginning in October 2010." (Id.) Plaintiffs further allege that "Defendants have exclusive knowledge or access to material facts about the Vehicles and their Engines that were not and are not known or reasonably discoverable by Plaintiffs and Class members." (Id. ¶ 45.)

### D. Defendants' representations and warranty coverage associated with the Engine

PACCAR provides a "Base Warranty" with every vehicle equipped with the Engine, which provides coverage for parts, components, and labor necessary to repair Engine damage for 24 months, 250,000 miles, or 6,250 hours. (Id. ¶ 47.) The warranty covers only "Warrantible Failures," or defects in material and factory workmanship. (Id.) The base warranty is part of the purchase price of vehicles equipped with the Engine. (Id.) It is part of the operations manual in every vehicle equipped with the Engine and cannot be separately negotiated. (Id. ¶ 48.) Plaintiffs, having repeatedly brought their vehicles for warranty related repairs without success, assert that they are "left without any remedy under a warranty to correct the Defective Vehicles." (Id. ¶ 58.)

PACCAR's 2010 Annual Report stated that the "Engine incorporates precision manufacturing, advanced design and premium materials to deliver best-in-class performance, durability and operating efficiency" and "superior performance." (Id. ¶ 31.) The 2014 Annual Report claims that "customers benefit from the Vehicle's excellent fuel economy, light weight and reliability." (Id. ¶ 32.) Plaintiffs assert that Defendants' marketing materials represent that the Engine "has a B10 design life of 1,000,000 miles" and that the Engine "had been properly

8

tested and tried for reliability and durability, in all climates and operating conditions, and that the Engines had undergone over 300,000 hours of lab testing and 50 million miles of real-world work in North America." (Id. ¶¶ 34-35.)

Furthermore, Defendants' website proclaims that "factory trained service technicians at over 670 locations in North America are equipped with the proper tools and expertise to keep PACCAR engines running in . . . trucks. Skilled technicians will provide all routine engine maintenance and quickly troubleshoot and repair all engine issues." (Id. ¶ 38.) Plaintiffs assert that "Defendants represented to Plaintiffs and Class members that each warranty repair would correct the Vehicle." (Id. ¶ 65.) According to Plaintiffs, each time they took their malfunctioning vehicles to Defendants' authorized service facilities, Defendants affirmed the following:

> "a. That the emission related parts and component failures were not the result of any application or installation that Defendants deemed improper;
> b. That the ATS failures not [sic] involve attachments, accessory items, or parts nots old or approved by Defendants;
> c. That the ATS failures were not the result of any improper engine maintenance, repair, wear and tear, neglect, or abuse;
> d. That the ATS failures were not the result of improper fuel, lubricants or liquids;
> e. That the ATS defects were not the result of any unreasonable delay in making the Vehicle available after notification of the problem;
> f. That the ATS failures were warrantable; and
> g. That the ATS defects were corrected following repair and replacement."

(Id. ¶ 101.)

**Procedural History**

Plaintiffs BK Trucking Company and Santelli Trucking, Inc. filed this action on March 31, 2015. [Docket Item 1.] After Defendants filed an initial motion to dismiss [Docket Item 10], the parties stipulated that Plaintiffs' case would be consolidated with a related class action filed in this District by Heavy Weight Enterprises, Inc. and Rusty Daniel Trucking Company, Inc., Case No. 15-cv-3256-JBS/AMD. [Docket Item 15.] Plaintiffs filed a Consolidated Class Action Complaint [Docket Item 17] on August 28, 2015. Defendants then filed the instant motion to dismiss. [Docket Item 21.]

**Parties' Arguments**

Defendants argue that the Complaint must be dismissed in its entirety. Defendants contend that Plaintiffs' breach of warranty claims are time-barred, or in the alternative, that Plaintiffs have failed to plead a breach of warranty claim because the Complaint does not describe a defect with particularity – according to Defendants, what Plaintiffs describe as a "defect" is the intentional design of the Engine to make it comply with the 2010 Emissions Standard – and because some Plaintiffs did not provide notice of a breach of the warranty. Next, Defendants take the position that Plaintiffs' consumer fraud claims under the New Jersey Consumer Fraud Act

10

("NJCFA") and Texas Deceptive Trade Practices Act ("DTPA") are not plead with the requisite particularity and that the Complaint does not demonstrate any omission or affirmative misrepresentation made by Defendants. Defendants further argue that Plaintiffs have failed to state a claim for breach of the implied covenant of good faith and fair dealing under New Jersey law and that Plaintiffs' claim for negligent design under Ohio law must be dismissed because Ohio law does not apply to this action.

Plaintiffs argue in response that they have sufficiently alleged a breach of warranty claim because the time limit in the Engine's warranty is unconscionable or unreasonable, because they have sufficiently alleged that the ATS is defective, and because Plaintiffs provided notice of their breach of warranty by returning their trucks to Defendants for repair and filing the instant lawsuit. Plaintiffs argue that their consumer fraud claim is properly plead because they have sufficiently alleged both knowing omissions and affirmative misrepresentations by Defendants. Plaintiffs further take the position that their claims for breach of good faith and fair dealing and negligent design are adequately plead, and that Defendants' argument regarding the applicability of Ohio law is premature and not a basis to dismiss the claim.

## II.   STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading

12

that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

In addition, Rule 9(b), Fed. R. Civ. P., imposes a heightened pleading standard on fraud-based claims, requiring a party to "state the circumstances constituting fraud with particularity." Klein v. Gen. Nutrition Companies, Inc., 186 F.3d 338, 344 (3d Cir. 1999). This requirement is intended "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

## III. DISCUSSION

### A. Breach of Express Warranty

Defendants argue that Plaintiffs' breach of express warranty claims under New Jersey, Ohio, and Texas law (Counts II, IV, and VII) must fail because they are time-barred, because Plaintiffs have failed to allege a particular defect in the Engine, and because some Plaintiffs failed to provide Defendants with timely notice of the alleged breach of warranty. Plaintiffs oppose each of these arguments.

#### 1. Time Bar

At the outset, Defendants argue that Plaintiffs' breach of warranty claims must be dismissed as time-barred. Defendants'

statute of limitations argument is an affirmative defense and "the burden of establishing its applicability to a particular claim rests with the defendant." Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions, Inc., 730 F.3d 263, 271 (3d Cir. 2013). A statute of limitations defense may be raised by motion under Rule 12(b)(6) if the limitations bar is apparent on the face of the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Moreover, the Third Circuit has stated in the context of the discovery rule that when "the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal." Schmidt, 770 F.3d at 251 (collecting cases) (quotation and citation omitted).

A breach of warranty claim, like any claim for breach of contract, must be commenced within four years after the cause of action accrues. U.C.C. § 2-725(1); see also N.J.S.A. § 2-725(1); Ohio. Rev. Code Ann. § 1302.98; Tex. Bus. & Com. Code Ann. § 2.725(a). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." U.C.C. § 2-725(2). The parties may reduce the limitations period by agreement to not less than one year. U.C.C. § 2-725(1).

14

PACCAR's subsidiaries, Kenworth and Peterbilt, expressly reduced the time period for commencing any legal action regarding their vehicles to one year from the accrual of the cause of action in their warranty agreements. (See Peterbilt Motors Company Limited Warranty Agreement [Docket Item 10-3] at 2, "It is agreed that you have 12 months from the accrual date of the cause of action to commence any legal action arising from the purchase or use of the Vehicle, or be barred forever.") Plaintiffs allege, inter alia, that they purchased their vehicles equipped with the Engine beginning between 2010 and 2012 and that "problems began shortly after the Vehicle was purchased." (Compl. ¶¶ 73, 75, 80, 82, 85-86, 91-92.) Plaintiffs do not contest that their claims on at least some of the vehicles, filed originally on March 31, 2015 and May 11, 2015, may be untimely based on the allegations of the Complaint. However, Plaintiffs argue, the doctrines of unreasonableness, unconscionability, and equitable tolling prevent the dismissal of their breach of warranty claims.

Equitable tolling may apply to Plaintiffs' breach of warranty claims and abrogate the one-year limitations period in Defendants' warranties. Generally, the UCC (and the corresponding New Jersey, Ohio, and Texas state laws) recognizes that the accrual of a cause of action is delayed until the plaintiff discovers, or should discover, the breach of warranty.

15

U.C.C. § 2-725(2). Plaintiffs' allegations plausibly invoke the discovery rule. The crux of Plaintiffs' Complaint is that Defendants knowingly failed to disclose defects in the Engines before and after the sale of the Engines at issue. The Complaint clearly alleges that, as a result of the alleged defect with the ATS, Plaintiffs were required to bring their vehicles to authorized repair facilities. During these repair attempts, it is alleged, Defendants represented to Plaintiffs that each instance of repair or replacement would correct the defect, despite knowing that it would not, and could not, do so. (See Compl. ¶ 101.) When exactly Plaintiffs should have learned that the alleged problems with the ATS were not just isolated incidents but, instead, a systemic defect, may well have been beyond the one-year mark for bringing suit. Because the Complaint does not reveal when the limitations period began to run, the statute of limitations cannot justify dismissal under Rule 12(b)(6). See Schmidt, 770 F.3d at 251.[2]

### 2. Sufficiency of Breach of Express Warranty Claim

Next, notwithstanding the claims' untimeliness, Defendants argue that Plaintiffs have failed to state a claim for breach of express warranty under New Jersey, Ohio, and Texas law. To state a claim for breach of express warranty, a plaintiff must show:

---

[2] Accordingly, the Court will not reach Plaintiffs' arguments regarding unreasonableness and unconscionability.

"(1) that [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007); Peruto v. TimberTech Ltd., 126 F. Supp. 3d 447 (D.N.J. 2015); see also U.C.C. § 2-313.

First, Defendants argue that Plaintiffs cannot maintain breach of warranty claims because they have not alleged any defects in the Engine that render it defective and non-conforming with the warranty. Defendants argue that Plaintiffs' claims for breach of warranty must be dismissed because they have failed to describe a particular "defect" in the Engine. According to Defendants, Plaintiffs "simply lump all purported repairs together under the global heading of 'defect' and then summarily claim that PACCAR breached its warranty because repairs of 'defects' were needed again after the warranty period ended," and these allegations fail to state a claim for relief. (Def. Br. at 15-16.) Plaintiffs take the position that their Complaint describes "defects in a system – the ATS – and that repeated failures in that system continue to result in derates and shutdowns." (Pl. Br. at 16.) This level of detail is sufficient at this stage of the litigation to survive dismissal.

17

Plaintiffs have alleged that all defects requiring repair in their vehicles originated in the ATS, and that specific detail about the ATS and its component systems is uniquely within Defendants' control. The Court cannot expect Plaintiffs to provide more specificity about the ATS without the benefit of discovery.

In the alternative, Defendants contend that any "defect" alleged in the ATS was not a defect at all, but instead a deliberate design intended to comply with the 2010 Emissions Standards. According to Defendants, the EPA "required engine manufacturers to incorporate engine design elements to ensure that the vehicle's user is properly maintaining the emissions system and that the appropriate emissions standards are met." (Def. Br. at 6, citing 76 Fed. Reg. at 32888.) Defendants take the position that the display of warning lights and the derating and shutting down of the Engine of which Plaintiffs complain were automatic measures integrated into the Engine, designed to alert drivers that the vehicle's emissions were above the EPA's permitted levels and to "motivate compliance" with the 2010 Emissions Standards, not indications that the Engine was malfunctioning. In response, Plaintiffs offer a different interpretation of the EPA's regulations, emphasizing that the EPA intended for engine derating and shut down to be rare and only "in extreme cases." 77 Fed. Reg. at 34135. According to

Plaintiffs, even if the Engine were designed to work in this manner to comply with EPA directives, a design that renders engines unreliable can still be defective. The Court finds that Plaintiffs have plausibly alleged a defect in the Engines that could support a breach of warranty at this stage.

Next, Defendants argue that Plaintiffs have failed to state a claim for a recoverable breach of warranty. To the contrary, Plaintiffs maintain in Counts II, IV, and VII that Defendants breached the base warranty that accompanies every Engine because "Defendants expressly warranted . . . that they would repair Defects in the Engines, which were supposed to be reliable, durable and economical," yet "they did not (and do not) cover the expenses associated with repairing the Vehicles" and "because the same Engines and the same defective ATS and integrated systems and their parts and components were placed in Vehicles during purported repairs." (Compl. ¶¶ 131, 133, 152, 154, 181, 183.) Plaintiffs assert that they relied on the presence of this warranty when purchasing or leasing their vehicles equipped with the Engine. (Id. ¶ 47.) In other words, the crux of Plaintiff's complaint is that Defendants breached the base warranty because they promised, but failed, to repair the Engine to keep it in reliable working order for the first two years Plaintiffs owned or leased their respective vehicles. This sets forth the basic elements of a breach of warranty

claim: a promise about the Engine, reliance on that promise, and a failure to carry out that promise within the specified time period.

Defendants mischaracterize Plaintiffs' theory of relief, taking the position that Plaintiffs seek relief for repairs required after the warranty expired. Of course such allegations could not form the basis of a breach of warranty claim: Defendants did not promise to make those repairs, so they could not have broken that promise. To the extent that Plaintiffs allege that the Engines in their vehicles have continued to malfunction after the expiration of the base warranty, these allegations support Plaintiffs' contention that Defendants' warranted repairs were unsuccessful and therefore a violation of their promise that repairs at authorized service facilities would maintain the Engines in "reliable, durable and economical" shape.

### 3. Notice of Breach of Warranty Claim

Finally, Defendants take the position that Plaintiffs' breach of warranty claims are procedurally deficient because they have not alleged that all Plaintiffs provided advanced notice to Defendants of their breach. A buyer must notify the seller of any breach of contract "within a reasonable time after he discovers the breach" and provide the seller with an opportunity to cure the breach or he cannot recover. U.C.C. § 2-

607(3); see also N.J.S.A. § 12A:2-607(3); Ohio Rev. Code Ann. § 1302.65(C); Tex. Bus. & Com. Code Ann. § 2.607(c). Plaintiffs do not dispute that some form of pre-suit notice is required under New Jersey, Ohio, and Texas law, but argue that Defendants have not done their part to invoke a lack of notice defense because they have not shown prejudice, and because Defendants were in fact aware of the alleged defects in the Engine.

States differ on what must be pleaded to satisfy the notice requirement, and the adequacy of notice is generally a question of fact for the jury. See In re Caterpillar, 2015 WL 4591236, at *27 (collecting cases); Strzakowlski v. Gen. Motors Corp., Case No. 04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 15, 2005) ("whether this notice-by-suit was provided within a reasonable time is a question for the fact finder"); Chemtrol Adhesives, Inc. v. Amer. Manufacturers Mut. Ins. Co., 537 N.E.2d 624, 638 (Ohio 1989) (notice requirement is a question of fact); Hull v. S. Coast Catamarans, L.P., 365 S.W.3d 35, 44 (Tex. Ct. App. 2011) ("notice is a question of fact to be determined by the trier of fact; it becomes a question of law only if no room for ordinary minds to differ exists"). Here, Plaintiffs have alleged that Defendants were placed on notice of the alleged defect in the ATS and provided with an opportunity to cure the breach every time a vehicle was brought in for repairs at one of its authorized repair facilities, because Defendants had the means

to track Engine malfunctions through ECM fault code data. At this stage of the litigation, this is enough to plausibly establish that Defendants were provided with notice of the breach of warranty.

For these reasons, the Court will deny Defendants' motion to dismiss Plaintiffs' breach of warranty claims.

### B.    Consumer Fraud Claims

Next, Defendants argue that Plaintiffs have failed to adequately allege claims under the New Jersey and Texas consumer fraud acts. To state a claim under the NJCFA, N.J.S.A. § 56:8-2, "a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal connection between the defendants' unlawful conduct and the plaintiffs' ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1086 (N.J. 2007). Actionable unlawful conduct under the NJCFA includes "any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. § 56:8-2. In other words, a plaintiff must claim that the defendant engaged in unlawful conduct that includes employing a misrepresentation or intentionally omitting a material fact. Menkes v. Prudential Ins. Co. of America, 762

22

F.3d 285 (3d Cir. 2014). To state a claim under the Texas DTPA, Tex. Bus. & Com. Code Ann. § 17.41 et seq., a plaintiff must show that "(1) the plaintiff is a consumer, a person who seeks or acquires goods or services by purchase or lease, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) the act constituted a producing cause of the consumer's damages." Gill v. Boyd Distribution Ctr., 64 S.W.3d 601, 604 (Tex. Ct. App. 2001) (citing Tex. Bus. & Com. Code Ann. § 17.50(a)). Like the NJCFA, "false, misleading, or deceptive acts" under the DTPA include affirmative misrepresentations or knowing omissions. Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5) and (24). Both statutes emphasize that they are remedial legislation and should be construed liberally in favor of consumers. N.J.S.A. § 56:8-2; Tex. Bus. & Com. Code Ann. § 17.44.

Defendants take the position that the Complaint alleges neither a knowing omission nor an affirmative representation, as required by both consumer fraud statutes, and that Plaintiffs' allegations conflate a claim for breach of express warranty with a consumer fraud claim. Plaintiffs contend that their allegations are sufficient to satisfy Rule 9(b)'s heightened pleading standard applicable to consumer fraud actions, and are conceptually separate from their breach of warranty cause of action. It is undisputed that Plaintiffs' consumer protection claims are subject to the heightened pleading standard of Rule

23

9(b). However, "courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control." Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989); DiMare v. MetLife Ins. Co., 369 Fed. App'x 342, 330 (3d Cir. 2010).[3] "Nonetheless, even under a non-restrictive application of the rule, pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." Craftmatic, 890 F.2d at 645.

To state a claim for consumer fraud based on an omission, Plaintiffs must allege that the defendant failed to disclose material information which induced the plaintiff to enter into a transaction. In re Caterpillar, Inc., C13 and C15 Engine Products Liability Litig., Case No. 14-3722, 2015 WL 4591236, at *31 (D.N.J. July 29, 2015).[4] Defendants correctly assert that a

---

[3] Similarly, the Fifth Circuit has held that "[w]hat constitutes particularity will necessarily differ with the facts of each case." Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003). The Court finds no reason not to use the same relaxed application of Rule 9(b) with respect to Plaintiffs' DTPA claims as it can with respect to their NJCFA claims.

[4] The parties do not argue that Texas law differs from New Jersey law on the requirements for a consumer fraud claim based on an omission. The Fifth Circuit has held that Section 17.46(b)(24) of the DTPA "requires intentional omission of a material fact by a Seller for the purpose of duping the customer." Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 175 (5th Cir. 2016) (citing Sidco Prods. Mktg., Inc. v. Gulf Oil Corp., 858 F.2d 1095, 1100 (5th Cir. 1988)). Therefore, the Court will consider

consumer fraud claim cannot be based on a conclusory allegation that a manufacturer knew of a defect and continued to sell a product without disclosing the fact, but Defendants' point misconstrues the nature of Plaintiffs' allegations. As discussed above, Plaintiffs have adequately alleged the existence of a defect in their vehicles, at least at this stage of the litigation: the ATS causes the Engine to shut down in a way that makes their trucks unfit for regular use, and the precise details of those systems are in the exclusive control of Defendants. Plaintiffs have further alleged that, if Defendants had disclosed to them the nature of the ATS and its impact on the Engine, they would not have bought vehicles equipped with the Engine or would not have paid over $100,000 for them. (Compl. ¶ 127.)

Furthermore, Plaintiffs have adequately alleged that this omission was made intentionally. Knowledge and intent are exempt from Rule 9(b)'s particularity requirement, so long as the circumstances surrounding such general allegations of knowledge suffice to infer "what defendant is alleged to have known and when." In re AZEK Building Prods., Inc. Marketing and Sales Practices Litig., 82 F. Supp. 3d 608, 623 (D.N.J. 2015) (citing Rait v. Sears, Roebuck & Co., Civ. 08-2461, 2009 WL 250309, at

---

these statutes substantively identical for the purposes of this motion to dismiss.

*4 (D.N.J. Feb. 3, 2009)); see also Maniscalco v. Brother
Intern. Corp. USA, 627 F. Supp. 2d 494, 499 (D.N.J. 2009)
(plaintiffs sufficiently plead intent and knowledge when their
complaint alleged the source and year of defendants' knowledge).
While it may be insufficient for Plaintiff to allege that
Defendant "must have known" about the defect, In re Advanta
Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999), abrogated
on other grounds by 551 U.S. 308 (2007), the surrounding
circumstances alleged in the Complaint suffice to adequately
allege an actionable intentional material omission of failing to
inform Plaintiffs of the ATS's impact on the Engine's day-to-day
performance and reliability.

Plaintiffs' allegations here are distinguishable from those
in McQueen, upon which Defendants rely to characterize
Plaintiffs' allegations as conclusory. There, the Court
dismissed a plaintiff's NJCFA claim based on a knowing omission
where a car owner alleged only "the effects of the alleged
defect" in her transmission system and that the defendant car
manufacturers "have been and remain on notice of the Vehicles'
defective and dangerous electronically controlled transmission
system" because they had received customer complaints and
because some drivers took their cars in for warranty repairs.
McQueen v. BMW of North Amer., LLC, Case No. 12-6674, 2013 WL
4607353, at *7 (D.N.J. Aug. 29, 2013). In this case, Plaintiffs

26

allege plausible grounds for knowledge and intent to omit accurate information about problems with the ATS based on the amount of testing reportedly performed on the Engine (Compl. ¶ 35) and allegations describing Defendants' authorized repair facilities' collection and use of ECM fault code data. (Id. ¶ 38, 43, 45.) Plaintiffs' allegations regarding the ECM fault code data in particular make it more plausible that Defendants knew of the alleged defects in their Engines than the allegations in McQueen; the only way for Defendants' approved repair facilities to diagnose and repair any issues with the Engine was apparently to check the vehicle's on-board computer, which provides a plausible way for Defendants to know of and track this alleged defect. Furthermore, Plaintiffs here have plausibly alleged that the issues with the Engine are more widespread than those in McQueen, where the plaintiff could turn to only a handful of defective vehicles, making it more likely that the Engine at issue here turned off because of a known systemic defect rather than because of an isolated issue. (Id. ¶¶ 69-97.)

Defendants also argue that, even if they did knowingly fail to disclose information regarding defects in the ATS, they were under no duty to disclose the concealed defect to Plaintiffs. "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to

27

induce the purchase." <u>Arcand v. Brother Intern. Corp.</u>, 673 F. Supp. 2d 282, 297 (D.N.J. 2009). While New Jersey courts generally do not recognize a duty for a manufacturer to disclose <u>future</u> or <u>potential</u> defects that may arise after the expiration of a warranty, <u>see</u>, <u>e.g.</u>, <u>Maniscalco</u>, 627 F. Supp. 2d at 501; <u>Suddreth v. Mercedes-Benz, LLC</u>, Case No. 10-5130, 2011 WL 5240965 (D.N.J. Oct. 31, 2011), it would defy reason if there were no duty for a manufacturer to disclose a <u>known</u> defect at the time of purchase. The crux of Plaintiffs' consumer fraud claims is that Defendants knew the Engines were defective and irreparable and failed to disclose this information to Plaintiffs prior to purchase. Courts around the country have permitted consumer fraud claims to proceed under similar allegations. <u>See In re Caterpillar</u>, 2015 WL 4591236, at *32 (collecting cases). Therefore, the Court finds based on the allegations in the Complaint that Plaintiffs have sufficiently alleged their consumer fraud claims under the NJCFA and the Texas DTPA by failing to disclose a known defect.

On the other hand, Plaintiffs have failed to adequately allege affirmative misrepresentations that Defendants made that might form the basis of a consumer fraud claim. To satisfy Rule 9(b)'s stringent standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud

28

allegation." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir.
2007). Plaintiffs have not identified with the requisite
particularity any specific statements they saw or relied on that
induced them to buy vehicles equipped with the Engine; instead,
they only generally allege that PACCAR represented in its
marketing materials that its Engine was supposed to "deliver
best-in-class performance, durability and operating efficiency
and . . . superior performance and fuel efficiency." (Compl. ¶
31.) Similarly, Plaintiffs allege that "Defendants represented
to Plaintiffs and Class members that each warranty repair would
correct the Vehicle; but after repair, Plaintiffs and Class
members continue to experience failures" (<u>id.</u> ¶ 65), but do not
identify when, where, by whom, or to whom these statements were
made. Accordingly, Defendants' motion to dismiss is granted to
the extent Plaintiffs' consumer fraud claims under the NJCFA and
the Texas DPTA are based on affirmative misrepresentations.

### C. Negligent Design under Ohio Law

Next, Defendants argue that Plaintiff Heavy Weight's claim
for negligent design, engineering, or manufacturing on behalf of
the Ohio class in Count V is not legally viable because Ohio law
does not apply to this action. Instead, Defendants contend that
Michigan law applies to Heavy Weight's claim and that Michigan
law does not recognize a negligent design claim where only

economic damages are alleged. Plaintiffs take the position that Defendants' choice of law argument is premature.

The federal courts apply the choice-of-law rules of the forum state – in this action, New Jersey – to determine what law governs a plaintiff's claims. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Thabault v. Chait, 541 F.3d 512, 535 (3d Cir. 2008). Under New Jersey law, choice-of-law determinations involve a two-step inquiry. First, a determination is made as to whether or not an actual conflict exists between the substance of the laws of each potential forum. If an actual conflict is found, New Jersey courts apply the "most significant relationship" standard in determining which state's law should govern the case – unless another state has a more significant relationship to the parties and issues, the law of the state of the injury is applied. P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008). This standard weighs the factors in the Restatement (Second) of Conflict of Laws corresponding to the plaintiff's cause of action. Id. Here, the Restatement section on fraud and misrepresentation applies. This provision instructs that the following factors should be considered:

> (a) The place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) The place where the plaintiff received the representations,

> (c) The place where the defendant made the representations,
> (d) The domicil [sic], residence, nationality, place of incorporation and place of business of the parties,
> (e) The place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) The place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2). This is, plainly, a fact-intensive inquiry. Thabault, 541 F.3d at 535.

Even assuming that an actual conflict between Michigan and Ohio law exists,[5] the Court is unable at this time to conduct the "most significant relationship" analysis without the benefit of a full factual record. Plaintiff Heavy Weight's allegations are inconclusive as to where its injury occurred, where the Engines were manufactured, and where its trucks equipped with the Engine failed and were maintained or serviced, all factors highly relevant to the "most significant relationship" analysis. "The Court need only determine if the Complaint contains 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element' in order to allow the challenged counts" to proceed under Ohio law at this time. Harper v. LG Electronics USA, Inc., 595 F. Supp. 2d 486, 491

---

[5] Plaintiffs contend that no such conflict exists, and contest that Defendants have met their burden of proving that Michigan law should apply at all. The Court will not reach Plaintiffs' alternative argument at this time.

(D.N.J. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)). Heavy Weight alleges that "most, if not all" of its vehicles equipped with the Engine were purchased in Ohio (Compl. ¶ 15) and that its trucks began experiencing Engine issues shortly thereafter. (Id. ¶ 86.) Because Heavy Weight alleges that the Engine defect existed at the time of sale, its injury may have occurred in Ohio. Moreover, Heavy Weight does not allege that its vehicles were repaired exclusively in its home state of Michigan.

Accordingly, the Court will deny Defendants' motion to dismiss Count V of the Complaint, finding its argument regarding the inapplicability of Ohio law inappropriate for this stage of the litigation.

### D. Breach of Implied Covenant of Good Faith and Fair Dealing

Finally, Defendants argue that the Complaint fails to state a claim for breach of the covenant of good faith and fair dealing under New Jersey law. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." Kalogeras v. 239 Broad Ave., L.L.C., 202 N.J. 349, 366 (2010). Accordingly, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (citations and quotations omitted). New Jersey courts have found an implied

covenant of good faith and fair dealing regardless of the type
of contract at issue. Wood v. New Jersey Mfrs. Ins. Co., 206
N.J. 562, 577-78 (2011).[6] "Courts imply a covenant of good faith
and fair dealing in order to protect one party to a contract
from the other party's bad faith misconduct . . . where there
is no breach of the express terms of the contract." Kapossy v.
McGraw-Hill, Inc., 921 F. Supp. 234, 248 (D.N.J. 1996). The
implied covenant cannot alter the clear terms of an agreement.
DiCarlo v. St. Mary Hosp., 530 F.3d 2355, 267 (3d Cir. 2008).
"Proof of bad motive or intention is vital to an action for
breach of the covenant." Brunswick Hills Racquet Club, Inc. v.
Route 18 Shopping Center Associates, 864 A.2d 387, 396 (N.J.
2005) (citing Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1130
(N.J. 2001)).

Defendants argue that Plaintiffs' claim for breach of
implied covenant must be dismissed because that claim is
duplicative of Plaintiffs' cause of action for breach of express
warranty. A party cannot "be found separately liable for

---

[6] Contrary to Defendants' argument, New Jersey courts have not
found that the implied covenant is inapplicable in contracts
between sophisticated commercial entities such as Plaintiffs and
Defendants in this action. See, e.g., Brunswick Hills Racquet
Club, Inc. v. Route 18 Shopping Center Associates, 864 A.2d 387
(N.J. 2005) (finding breach of implied covenant of good faith
and fair dealing in case between commercial tenant and
landlord); Wilson v. Amerada Hess Corp., 773 A.2d 1121 (N.J.
2001) (considering breach of implied covenant in case between
gasoline supplier and its franchise dealers).

breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct." <u>Wade v. Kessler Inst.</u>, 798 A.2d 1251, 1261 (N.J. 2002). Plaintiffs ground both counts in essentially the same conduct: Defendants breached the express warranty when they represented to Plaintiffs that they would repair the Engines so that the Engine would be "reliable, durable and economical," but knew that the repairs performed would not, and could not, correct defects in the Engines; and Defendants breached the implied covenant when they knew that the warranty was unconscionable because it could not be fulfilled. (<u>Compare</u> Compl. ¶¶ 131 and 133 <u>with</u> ¶¶ 147 and 148.) Accordingly, the Court will dismiss Plaintiffs' Count III for breach of the implied covenant of good faith and fair dealing.[7]

**IV.   CONCLUSION**

An accompanying Order will be entered.

| June 30, 2016 | s/ Jerome B. Simandle |
|---|---|
| Date | JEROME B. SIMANDLE |
|  | Chief U.S. District Judge |

---

[7] Because the Court is dismissing this claim as duplicative, it will not consider the parties' arguments regarding the sufficiency of Plaintiffs' allegations of bad faith.